Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 7285 | **DATE** | 3/27/2002 |
| **CASE TITLE** | Howard Holt, et al. vs. Norman P. Wexler, etc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 4/11/2002 at 9:00 A.M.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Plaintiffs' Motion for Summary Judgment [34-1] is denied and Defendant's Motion for Summary Judgment [39-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 28 2002 date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | 02 MAR 27 PM 4:14 Date/time received in central Clerk's Office | date mailed notice  mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HOWARD HOLT and JANICE HAYE, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 98 C 7285 |
| ) | |
| NORMAN P. WEXLER, doing business as ) | Magistrate Judge Nan R. Nolan |
| WEXLER & WEXLER, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiffs' Motion for Summary Judgment (Docket Entry #34) and Defendant's Cross Motion for Summary Judgment or Judgment on the Pleadings (Docket Entry #39). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiffs Howard Holt and Janice Haye argue that the defendant's standard collection letter violates the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*. Defendant Norman P. Wexler, doing business as Wexler & Wexler ("Wexler"), responds that he is entitled to summary judgment because the plaintiffs have not submitted sufficient evidence from which a factfinder could reasonably conclude that an "unsophisticated debtor" would find the collection letters to be false, misleading or deceptive. For the reasons set forth below, the plaintiffs' motion for summary judgment is DENIED, and Wexler's motion for summary judgment is DENIED.



DOCKETED
MAR 28 2002

## Background

The following facts are undisputed. Wexler sent both plaintiffs a dunning letter. Except for information particular to each plaintiff's debt, e.g., the amount of debt, the letters are identical. The top portion of both letters contain Wexler's letterhead (which identifies him as an attorney), the recipient's address and an identification of the debt at issue. The remainder of both letters reads as follows:

### THIS IS A MATTER OF VITAL IMPORTANCE TO YOU!

As you well know, a lawsuit has been filed against you and the court has entered a judgment against you as of [date of judgment] for [amount of judgment] plus court costs; the current amount due is [amount due] which includes interest to date on the unpaid balance at 9% per year since the entry of the judgment. This claim won't fade away! Additional legal proceedings will be implemented to enforce collection; credit bureaus have recorded the fact in your credit report that you are a judgment debtor and skip tracers may contact your references, your former employers, your relatives and your neighbors in an effort to gain information about your assets.

The longer this matter goes unpaid, the more it will ultimately cost you as interest is constantly accruing. Sooner or later it will catch up to you and you may be denied credit or find that attachment proceedings have been filed against your assets or wages.

Now is the time to arrange for a disposition of this claim; if you are unable to pay in full, we will help you with an installment payment plan. Only by payment of this claim can your credit rating be rehabilitated as we will notify the credit reporting agencies to amend our adverse listing in your records when the claim has been paid or otherwise settled.

However, once additional legal proceedings are instituted, we will no longer be willing to accommodate your needs. Act now in your own best interests! This letter is an attempt to collect a debt and any information obtained may be used for that purpose.

Very truly yours,

**WEXLER & WEXLER**

(Pls.' Mot. for Summ. J., Exs. A and B (emphasis in original).) Neither plaintiff gave his or her creditor or Wexler permission to contact the plaintiffs' references, former employers, relatives or neighbors. (Pls.' Statement of Material Facts, Apps. A ¶10, B ¶11.)

## Discussion

Both parties move for summary judgment. Additionally, Wexler moves the Court to strike portions of the affidavit of the plaintiff's expert. Because the ruling on the admissibility of the affidavit will affect what evidence may be considered for summary judgment purposes, the Court's analysis begins with the motion to strike.

### I. Motion to Strike Affidavit of Plaintiffs' Expert

In support of their motion for summary judgment, plaintiffs rely on the affidavit of Edward C. Lawrence, Professor of Finance and Department Chair in the College of Business Administration at the University of Missouri-St. Louis. Wexler moves the Court to strike Dr. Lawrence's opinions that (1) Wexler's standard collection letter violates the FDCPA; and (2) payment of a delinquent debt cannot "rehabilitate" a consumer's credit rating. (Pls.' Statement of Material Facts, App. C ¶¶8-10.)[1]

---

[1] Dr. Lawrence's affidavit consists of ten paragraphs—only paragraphs eight, nine, and ten contain any opinions. Paragraphs eight through ten of the Lawrence affidavit state:

8. In my opinion, the Wexler & Wexler letter cited above violates section 807 of the Fair Debt Collection Practices Act (FDCPA). Specifically, the last sentence of the first paragraph unfairly attempts to intimidate and embarrass consumers by threatening that skip tracers may contact "references, former employers, your relatives, and your neighbors in an effort to gain information about your assets." Due to this deceptive wording, unsophisticated debtors are likely to be mislead into believing collection agencies have the right to disclose their financial problems to third parties. This is one of the types of misrepresentation the FDCPA was passed to prevent.

9. The second sentence in the third paragraph of the same form letter states "Only by payment of this claim can your credit rating by rehabilitated .....". [sic] This is another example of a false and misleading statement carefully designed to induce the debtor into payment. Neither the creditor nor

Wexler argues that this Court should exclude these opinions under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), because Dr. Lawrence is not qualified to render legal opinions and because his opinion about whether payment of a debt would rehabilitate a consumer's credit rating is unsupported by sufficient facts or data.

In *Daubert*, the Supreme Court provided a non-exhaustive list of factors courts could consider when determining whether to admit expert testimony, including whether the opinion can be (and has been) tested, whether it has been subjected to peer review and publication, whether there is a known or potential error rate, and whether it is generally accepted in the relevant scientific community. *Daubert*, 509 U.S. at 593-94. Although the factors listed in *Daubert* are useful guideposts in determining whether to admit expert testimony, a litigant's failure to establish these factors does not necessarily mean that an expert's opinion is inadmissible. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). All that is required is that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. The critical inquiries are whether "the expert testimony at issue 'both rests on a reliable foundation and

---

the collection agency have any control over the consumer's credit rating. The rating for any individual is determined by the credit bureau based on the aggregate credit history of the consumer. In most cases today, the actual credit score is determined by proprietary statistical models that consider many different variables including the consumer's performance on all reported credit arrangements.. [sic]

10. If the debtor repaid the debt, Wexler & Wexler could report the change in debt status to the credit bureau. While this would be a positive benefit to the consumer, it would not erase any of the highly damaging delinquency and default information already contained in the file. It has been my experience that for the overwhelming majority of consumers facing this situation, the credit rating would not improve (due to delinquencies on other loans) yet alone be totally "rehabilitated" as Wexler & Wexler claim. In my opinion, this statement also clearly violates section 807 of FDCPA prohibiting false and misleading representations.

is relevant to the task at hand.'" *United States v. Cruz-Velasco*, 224 F.3d 654, 660 (7th Cir. 2000) (quoting *Daubert*, 509 U.S. at 597). The Supreme Court's holdings in *Daubert* and *Kumho Tire* have been codified in Federal Rule of Evidence 702, which provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). With these principles in mind, the Court turns to the specific opinions challenged in this case.

A. Dr. Lawrence's Opinion that Wexler's Standard Collection Letter Violates the FDCPA

Dr. Lawrence opines that the collection letters received by the plaintiffs violate the FDCPA by (1) "unfairly attempt[ing] to intimidate and embarrass consumers" and (2) misleading consumers into believing both that collection agencies have the right to disclose their financial problems to third parties and that paying the referenced debt would "rehabilitate" the plaintiffs' credit ratings. (Pls.' Statement of Material Facts, App. C ¶¶8-10.) Conceding that Dr. Lawrence is not a legal expert, the plaintiffs state that they did not retain Dr. Lawrence to render opinions on whether the collection letters violate the FDCPA. Rather, the plaintiffs assert that they retained Dr. Lawrence to render an opinion on how consumer credit ratings are calculated—specifically, whether payment of a delinquent debt can rehabilitate a consumer's credit rating. (Pls.' Resp. to Def.'s Rule 56.1(b)(3)(B) Statement ¶¶1-6.) Based on the plaintiffs' concession that Dr. Lawrence is not qualified to render opinions on whether Wexler's standard collection letter violates the FDCPA, the Court strikes the

following portions of Dr. Lawrence's affidavit: (1) paragraph eight; (2) the second sentence of paragraph nine; and (3) the final sentence of paragraph ten.[2]

B. Dr. Lawrence's Opinion that Payment of a Delinquent Debt Cannot Rehabilitate a Consumer's Credit Rating

Dr. Lawrence's affidavit also states that "for the overwhelming majority of consumers [who pay a delinquent debt], the credit rating would not improve (due to delinquencies on other loans) yet alone be totally "rehabilitated" as Wexler & Wexler claim." (Pls.' Statement of Material Facts, App. C ¶10 (parenthetical in original).) This is not the first FDCPA case in which Dr. Lawrence has offered this opinion. In *White v. Financial Credit Corp.*, No. 99 C 4023, 2001 WL 1665386, at *3 (N.D. Ill. Dec. 27, 2001), the district court struck Dr. Lawrence's opinion that the payment of one debt "doesn't significantly improve one's credit rating." The *White* court reasoned that Dr. Lawrence's opinion was based on his unsupported estimation that people who default on one debt generally default on multiple debts. *Id.* This case is no different. Here, Dr. Lawrence's opinion that payment of a delinquent debt cannot rehabilitate a consumer's credit rating is based on his estimation that the "overwhelming majority of consumers" who default on one debt have delinquencies on other loans. (Pls.' Statement of Material Facts, App. C ¶10.) As in the *White* case, Dr. Lawrence provides no facts or data in support of his assumption regarding the financial condition of the "overwhelming majority of consumers" who default on a debt. Because Dr. Lawrence does not provide sufficient

---

[2] Had the plaintiffs not conceded this point, this Court would have concluded that Dr. Lawrence is not qualified to render opinions on whether language in a collection letter is misleading or confusing in violation of the FDCPA. The plaintiffs admit that (1) Dr. Lawrence is not an attorney or legal expert; (2) he did not review case law relating to the FDCPA; (3) he has never published anything relating to the FDCPA; (4) he has never reviewed studies of how certain collection practices affect consumers; (5) he has no specialized training in communication, rhetoric, psychology or sociology; and (6) he has never performed any studies of how consumers interpret language in a collection letter. (Pls.' Resp. to Def.'s Rule 56.1(b)(3)(B) Statement ¶¶1-3, 5, 6, 9.)

facts or data to support his opinion, the Court strikes the third sentence of paragraph ten of Dr. Lawrence's affidavit, i.e., Dr. Lawrence's opinion that payment of a delinquent debt cannot "rehabilitate" a consumer's credit rating. Fed. R. Evid. 702; *see also Clark v. Takata Corp.*, 192 F.3d 750, 757, 759 (7th Cir. 1999) (holding that expert opinion that is based on an unsupported factual assumption is not helpful to trier of fact).

C. Remaining Portions of Dr. Lawrence's Affidavit

The remaining portions of paragraphs nine and ten of Dr. Lawrence's affidavit contain his explanation of how credit ratings are calculated. Specifically, the remaining portions of those paragraphs state:

> 9. ...Neither the creditor nor the collection agency have any control over the consumer's credit rating. The rating for any individual is determined by the credit bureau based on the aggregate credit history of the consumer. In most cases today, the actual credit score is determined by proprietary statistical models that consider many different variables including the consumer's performance on all reported credit arrangements.
>
> 10. If the debtor repaid the debt, Wexler & Wexler could report the change in debt status to the credit bureau. While this would be a positive benefit to the consumer, it would not erase any of the highly damaging delinquency and default information already contained in the file.

(Pls.' Statement of Material Facts, App. C ¶¶9-10.) Wexler did not move the Court to strike these portions of the affidavit. Even if Wexler had filed such a motion, the Court would have concluded that Dr. Lawrence is qualified to render these opinions. Dr. Lawrence's general statements regarding the calculation of consumer credit ratings are both reliable and relevant. Dr. Lawrence's experience and research qualifies him as an expert in the field of consumer credit. At his deposition, Dr. Lawrence testified that his research focuses on the area of consumer lending. Specifically, Dr. Lawrence testified that he conducted several studies for lending institutions in the area of risk

-7-

management and consumer credit portfolios that involved the calcuation of consumer credit ratings, published an article entitled "Discrimination in Consumer Credit" in a peer-review journal, and teaches a university course that deals with consumer lending. (Pls.' Resp. to Def.'s Rule 56.1(b)(3)(B) Statement, App. B, pp. 8, 10, 22, 36.) Thus, he is qualified to render an opinion on the general method for calculating a consumer's credit rating, including his opinion that payment of a delinquent debt would not erase any delinquency and default information already contained in the consumer's file. *Cf. Cruz-Velasco*, 224 F.3d 654, 660 (7th Cir. 2000) (expert in field of narcotics trafficking qualified to testify on general structure of drug organizations). Also, Dr. Lawrence's explanation of how consumer credit ratings are calculated will assist the trier of fact. In this case, the parties dispute whether Wexler's collection letters made false, deceptive or misleading statements regarding rehabilitation of the plaintiffs' credit ratings. An explanation of how the payment of a delinquent debt impacts a consumer's credit rating will assist the factfinder in resolving this dispute.

## II. Parties' Cross-Motions for Summary Judgment

The FDCPA states in pertinent part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general applicability of the foregoing, the following conduct is a violation of this section:...

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.

The collection letters at issue in this case inform the plaintiffs that "skip tracers may contact your references, your former employers, your relatives and your neighbors in an effort to gain information about your assets," and that "[o]nly by payment of this claim can your credit rating be rehabilitated as we will notify the credit reporting agencies to amend our adverse listing in your records when the claim has been paid or otherwise settled." Plaintiffs argue that these two statements constitute false and deceptive representations in connection with the collection of a debt in violation of §§ 1692e, and 1692e(10). Wexler responds that he is entitled to summary judgment on this claim because the plaintiffs failed to present sufficient evidence from which a factfinder could reasonably conclude that an "unsophisticated debtor" would be confused or misled by the collection letters. Plaintiffs also argue that the "skip tracers" statement constitutes a threat to take an action that cannot legally be taken in violation of 15 U.S.C. § 1692e(5). Wexler did not respond to plaintiffs' § 1692e(5) argument, nor did he move for summary judgment on that claim.

Summary Judgment Standard

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Harbours Pointe of Nashotah, LLC v. Village of Nashotah*, 278 F.3d 701, 704 (7th Cir. 2002). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A party opposing a properly supported motion

for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." *Id.* at 256.

"Unsophisticated Debtor" Standard

Practices that allegedly violate the FDCPA must be viewed from the objective standard of an "unsophisticated debtor." *Petit v. Retrieval Masters Creditors Bureau*, 211 F.3d 1057, 1060 (7th Cir. 2000). The "unsophisticated debtor" is not as learned in commercial matters as federal judges, but she is not completely ignorant. *Id.* Although the "unsophisticated debtor" may be uninformed, naive, or trusting, she is not the "the very last rung on the sophistication ladder." *Id.* (quoting *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994)). This uneducated debtor possesses "rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses 'reasonable intelligence,' and is capable of making basic logical deductions and inferences." *Id.* (citing *Chaudhry v. Gallerizzo*, 174 F.3d 394, 408-08 (4th Cir. 1999)). Furthermore, while an "unsophisticated debtor" may tend to read collection letters literally, she does not interpret them in a bizarre or idiosyncratic fashion. *Id.* Under this standard, a statement will not be confusing or misleading unless a significant fraction of the population would be similarly misled. *Id.* At the summary judgment stage, however, a plaintiff must do more than merely speculate about how a naive debtor would interpret the letter. *Id.* at 1061. The plaintiff must offer sufficient evidence to create a genuine factual issue for trial. Fed. R. Civ. P. 56(e).

**A. Plaintiffs' Summary Judgment Motion**

The plaintiffs' complaint alleges that Wexler's standard collection letter violates the FDCPA by misrepresenting that the plaintiffs' credit history can be rehabilitated and by threatening to contact persons that Wexler cannot legally contact. Plaintiffs move for summary judgment on both claims.

1. Whether the Collection Letters Misrepresent that the Plaintiffs' Credit History Can Be "Rehabilitated"

The collection letters state that "[o]nly by payment of this claim can your credit rating be rehabilitated as we will notify the credit reporting agencies to amend our adverse listing in your records when the claim has been paid or otherwise settled." Plaintiffs argue that this statement is false and deceptive because neither a debt collector nor a creditor can remove delinquency and default information contained in the debtor's credit file. In one of the remaining portions of his affidavit, Dr. Lawrence testifies that "[although] Wexler['s] . . . report [of] the change in debt status to the credit bureau . . . would be a positive benefit to the consumer, it would not erase any of the highly damaging delinquency and default information already contained in the file." (Pls.' Statement of Material Facts, App. C ¶ 10.) The plaintiffs reason that Wexler's report of a change in debt status cannot "rehabilitate" the plaintiffs' credit ratings because the "highly damaging" delinquency information will continue to have an adverse impact. However, Wexler disputes that past delinquency information adversely impacts a consumer's credit rating. At his deposition, Wexler testified that, to reestablish credit, the "only thing that matters" is that an unpaid debt has been paid. (Pls.' Statement of Material Facts, Ex. C, p. 77.) If Wexler is correct, the collection letters are not deceptive or misleading. This factual dispute is sufficient to preclude summary judgment. Accordingly, the plaintiffs' motion for summary judgment on this claim is denied.

2. Whether the Collection Letters Threaten to Take An Action That Cannot Legally be Taken

It is undisputed that the collection letters threaten that "skip tracers may contact your references, your former employers, your relatives and your neighbors in an effort to gain information about your assets." (Def.'s Local Rule 56.1(b)(3) Resp. and Statement, ¶¶ 6, 13.) The plaintiffs

-11-

argue that this statement violates the FDCPA by threatening to take an action that cannot be legally taken because federal law—specifically 15 U.S.C. § 1692c(b)—prohibits debt collectors from contacting such third persons. Section 1692c(b) states:

> (b) Communication with third parties
> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b). Although § 1692c(b) generally prohibits debt collectors from contacting third persons, there are exceptions to that general rule. Therefore, to show that they are entitled to judgment as a matter of law, the plaintiffs must establish that none of the exceptions apply in this case. Specifically, the plaintiffs must demonstrate that (1) Wexler's threatened communication was not for the purpose of acquiring "location information," a communication permitted by § 1692b, (2) Wexler did not have permission from the plaintiffs to contact their references, former employers, relatives and neighbors, (3) Wexler did not have permission from a court of competent jurisdiction to contact such persons, and (4) Wexler's communication with such persons could never be reasonably necessary to effectuate a postjudgment judicial remedy. The plaintiffs presented undisputed evidence establishing that the first two exceptions do not apply in this case—the collection letter states that the communication is to "gain information about the [plaintiffs'] assets," and the plaintiffs' affidavits establish that they did not give Wexler permission to contact their

references, former employers, relatives and neighbors. However, the plaintiffs presented no evidence regarding the last two exceptions.

Instead of addressing each exception, the plaintiffs cite *Lamb v. M&M Assoc., Inc.*, No. C-3-96-463, 1998 U.S. Dist. LEXIS 13773 (S.D. Ohio Sept. 1, 1998), for the proposition that a debt collector's threat to obtain non-location information from a debtor's employer violates the FDCPA. The Court concludes that *Lamb* is distinguishable from the present case. In *Lamb*, the plaintiff testified at her deposition that, during a phone conversation, the debt collector threatened to garnish the plaintiff's wages and then asked to be put in contact with the plaintiff's employer. Reasoning that this evidence presented a disputed issue of fact as to whether the debt collector threatened to contact a third person for purposes of acquiring non-location information, the district court denied the defendant's motion for summary judgment. *Id.* at *36. The *Lamb* court did not grant summary judgment for the plaintiff. Moreover, because the creditor in *Lamb* had not yet sued or obtained a judgment against the plaintiff, the last two exceptions listed in § 1692c(b)—whether a court of competent jurisdiction gave the debt collector permission to contact third persons or whether such communication was necessary to effectuate a postjudgment judicial remedy—did not apply in that case. In this case, however, the collection letters were sent after the creditors obtained judgments against the plaintiffs. The record in this case contains no evidence pertaining to whether a court of competent jurisdiction granted Wexler permission to contact the plaintiffs' references, former employers, relatives and neighbors. Far from being undisputed, this issue is presently undeveloped. Accordingly, the plaintiffs are not entitled to summary judgment on this claim. *See Pentz v. Truserv Corp.*, No. 00 C 600, 2001 WL 417776, at *7 (N.D. Ill. Apr. 19, 2001).

## B. Defendant's Summary Judgment Motion

Wexler's motion for summary judgment addresses only the plaintiffs' claims that the collection letters misrepresent that payment of the debts will rehabilitate the plaintiffs' credit ratings. Wexler argues that he is entitled to summary judgment on this claim because the plaintiffs failed to submit sufficient evidence from which a factfinder could reasonably conclude that an "unsophisticated debtor" would find the collection letters false, deceptive or misleading. This argument is based on two Seventh Circuit cases—*Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500 (7th Cir. 1999) and *Johnson v. Revenue Mgmt.*, 169 F.3d 1057 (7th Cir. 1999)—that reversed district court dismissals of FDCPA complaints. In *Johnson*, the Seventh Circuit commented generally on proving consumer confusion in FDCPA cases; the court stated that "[t]o learn how an unsophisticated reader reacts to a letter, the judge may need to receive evidence. A concurring opinion in *Gammon* suggested that this evidence might include the kind of surveys used to measure confusion in trademark cases. If all the plaintiffs have to go on is the language of these letters, they must lose in the end." *Johnson*, 169 F.3d at 1060 (internal citation omitted). Similarly, in *Walker*, the court noted that the plaintiffs could not prevail based solely on the letters involved in that case. *Walker*, 200 F.3d at 504. Wexler interprets these cases as imposing a requirement that FDCPA plaintiffs must always submit evidence extrinsic to the collection letters at issue in order to establish that an unsophisticated debtor would be confused by the letter.

Wexler's argument fails for two reasons. First, the plaintiffs in this case do not rely solely on the collection letters. They also rely on the remaining portions of Dr. Lawrence's affidavit which state that Wexler cannot remove any of the "highly damaging" delinquency information from the plaintiffs' credit files. Second, Wexler's argument that FDCPA plaintiffs must always submit

-14-

evidence extrinsic to the collection letter has already been rejected by several courts. *Avila v. Rubin*, 84 F.3d 222, 226-27 (7th Cir. 1996); *Matthews v. First Revenue Assurance, L.L.C.*, No. 00 C 3711, 2001 WL 864272, at *3 (N.D. Ill. July 31, 2001); *Smith v. Short Term Loans, L.L.C.*, No. 99 C 1288, 2001 WL 127303, at *10 (N.D. Ill. Feb. 14, 2001). Wexler's argument fails to recognize that a collection letter is evidence that a court may consider when deciding whether a debt collection practice would confuse an "unsophisticated consumer" in violation of the FDCPA. If the letter is confusing on its face—for example, a letter that both informs a debtor that she has thirty days in which to dispute a debt and also demands payment within a week—a court may grant summary judgment for the plaintiff based solely on the language of the letter. *See Bartlett v. Heibel*, 128 F.3d 497, 500-01 (7th Cir. 1997); *Avila*, 84 F.3d at 226; *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34-35 (2d Cir. 1996); *Swanson v. Southern Or. Credit Serv., Inc.*, 869 F.2d 1222, 1225-26 (9th Cir. 1988) (per curiam). On the other hand, a court may grant summary judgment for the defendant if a letter is not confusing on its face and the plaintiff fails to present any additional evidence establishing that an unsophisticated consumer would be misled or confused by the letter. *See Petit v. Retrieval Masters Creditors Bureau*, 211 F.3d 1057, 1061-62 (7th Cir. 2000). In the middle of these two extremes are cases in which the collection letter "presents enough ambiguity that an unsophisticated consumer might be misled by it," but not enough to establish a violation of the FDCPA as a matter of law. *Smith*, 2001 WL 127303, at *10. In this last category of cases, summary judgment is inappropriate for either party because the factfinder must decide whether the letter would confuse an unsophisticated consumer. *Id.* This case falls into this last category. The language of the collection letters together with the remaining portions of Dr. Lawrence's affidavit present enough ambiguity to survive summary judgment. Assuming that the remaining portions of Dr. Lawrence's affidavit

-15-

are true, a reasonable factfinder could conclude that Wexler's statements about credit rating rehabilitation would confuse an unsophisticated debtor. Accordingly, Wexler's motion for summary judgment is denied.

## Conclusion

For the foregoing reasons, this Court DENIES the plaintiffs' summary judgment motion and DENIES the defendant's summary judgment motion.

**ENTER:**

*Nan R. Nolan*

**Nan R. Nolan**

**United States Magistrate Judge**

Dated: March 27, 2002